1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 LOLITA DENEANNE DAVIS,      CASE NO. CV 17-2558 SS

12          Plaintiff,

13    v.          **MEMORANDUM DECISION AND ORDER**

14 NANCY A. BERRYHILL, Acting
Commissioner of Social
15 Security,

16          Defendant.

17

18 **I.**

19 **INTRODUCTION**

20

21      Lolita Deneanne Davis ("Plaintiff") brings this action

22 seeking to overturn the decision of the Acting Commissioner of

23 Social Security (the "Commissioner" or "Agency") denying her

24 application for Supplemental Security Income ("SSI"). The parties

25 consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of

26 the undersigned United States Magistrate Judge. (Dkt. Nos. 11-

27 13). For the reasons stated below, the Court AFFIRMS the

28 Commissioner's decision.

## PROCEDURAL HISTORY

On March 28, 2013, Plaintiff filed an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act alleging a disability onset date of February 22, 2013.[1]  (AR 214-22, 230-32).  The Commissioner denied Plaintiff's applications initially and on reconsideration.  (AR 129-56).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (AR 172-74), which took place on September 23, 2015 (AR 35-70).  The ALJ issued an adverse decision on November 4, 2015, finding that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that she can perform.  (AR 22-31).  On January 31, 2017, the Appeals Council denied Plaintiff's request for review.  (AR 3-5).  This action followed on April 3, 2017.

---

[1] Plaintiff was previously found not disabled in a final decision dated February 21, 2013, based on a prior SSI application filed on July 11, 2011.  (AR 22, 114-25).  "The principles of res judicata apply to administrative decisions . . . .  The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability."  Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (citation omitted).  Here, the ALJ found that Plaintiff "has not [made] a showing of a changed circumstance material to the determination of disability."  (AR 22).

**III.**

**FACTUAL BACKGROUND**

Plaintiff was born on May 19, 1969. (AR 230). She was forty-six years old when she appeared before the ALJ on September 23, 2015. (AR 35). Plaintiff completed the eleventh grade and does not have a GED. (AR 41-42). She is not married and is homeless. (AR 40, 54). Plaintiff last worked in 2008 doing in-home support. (AR 42). She alleges disability due to: spinal injury, depression, insomnia and back injury. (AR 234).

## A.    **Plaintiff's Testimony**

Plaintiff testified that she is unable to work because of auditory hallucinations, insomnia, depression and back pain. (AR 42-46). She takes Norco for her back pain, Abilify and Zoloft for her mental health issues, and Trazadone for her insomnia, all of which provide some relief. (AR 47, 52-53). She denied any side effects from her medications. (AR 52-53). Plaintiff is homeless, caries her possessions in a backpack, uses Access Services to get around and is unable to walk more than a half block before needing to rest. (AR 41, 46, 54-56). She denied using drugs or alcohol. (AR 57).

**B.    Treatment History**

In September 2009, Plaintiff was the victim of a home invasion and was shot.  (AR 309).  A bullet fragment remains in her left hip.  (AR 309).

On April 9, 2012, Plaintiff presented to Salvador E. Lasala, M.D., complaining of depression, lack of motivation, poor energy, anxiety and insomnia.  (AR 306).  On examination, Plaintiff's appearance, behavior and speech were unremarkable.  (AR 306).  She had an appropriate affect, normal thought processes and abstract thinking, anxious and depressed mood, and poor insight, judgment and reality assessments.  (AR 306).  She denied suicidal or homicidal ideations.  (AR 306).  Dr. Lasala continued doxepin and Abilify,[2] finding that Plaintiff's medications were stabilizing and reducing her symptoms.  (AR 306).  On May 22, 2012, Plaintiff complained of depression and insomnia.  (AR 303).  On examination, her appearance, behavior, affect, thought, abstract thinking and speech were unremarkable and appropriate.  (AR 303).  Her mood was depressed and her insight, judgment and reality assessment were poor.  (AR 303).  Dr. Lasala increased her doxepin and Abilify dosages.  (AR 303).  During follow-up visits on July 13, October 3, and December 18, 2012, mental status examinations were largely unremarkable:  Plaintiff's appearance, behavior, thoughts and

---

[2]  Sinequan (doxepin) is used to treat depression and anxiety. <www.drugs.com/mtm/doxepin-sinequan.html> (last visited Dec. 5, 2017). Abilify (aripiprazole) is an antipsychotic medication used to treat the symptoms of schizophrenia and bipolar disorder. <www.drugs.com/abilify> (last visited Dec. 5, 2017).

speech were normal.  (AR 298, 299, 301).  On February 12, 2013, Plaintiff complained of insomnia and increased anxiety and pain. (AR 297).  A mental status examination was largely unremarkable. (AR 297).  While Plaintiff exhibited an anxious mood and poor insight, judgment and reality assessment, her appearance, behavior, thoughts and speech were all normal.  (AR 297).  On April 9, Plaintiff admitted that she had improved mood and sleep.  (AR 296).

On July 29, 2013, Peter Bradley, Ph.D., a nonexamining state agency consultant, reviewed the medical record and concluded that Plaintiff has a mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace.  (AR 134).  Dr. Bradley opined that Plaintiff is moderately limited in the ability to understand, remember and carry out detailed instructions but can learn and remember basic work instructions and tasks of one or two steps.  (AR 137-38).  On January 27 and March 24, 2014, the state agency consultants recommended that the Agency order a psychological consultative examination to assess Plaintiff's mental status.  (AR 145, 147).

On February 14, 2013, Plaintiff began treating with Stanley H. Schwartz, M.D.  (AR 276).  She complained of severe hip and back pain related to a 2009 gunshot wound.  (AR 276).  She denied fatigue, weakness or sleep disorder.  (AR 277).  An x-ray confirmed that Plaintiff has a bullet fragment in her left thigh.  (AR 280). At a routine follow-up on February 27, 2013, Plaintiff was well developed and nourished, in no acute distress.  (AR 282).  She was

diagnosed with pain in her lower back, left hip and left knee and prescribed baclofen, Norco and tramadol.[3]  (AR 282-84).  On April 5, 2013, Plaintiff was alert and cooperative, with a normal mood and affect and normal attention span and concentration.  (AR 286).

On January 29, 2014, Plaintiff began treating with the Los Angeles County Department of Mental Health.  (AR 309-13). Plaintiff complained of paranoia and insomnia, along with difficult interpersonal relationships with friends and family.  (AR 309).  A mental status examination was generally unremarkable.  (AR 312). Plaintiff's appearance, motor activity, speech, orientation, intellectual functioning, memory, fund of knowledge, affect and thought content were all normal.  (AR 312).  She did exhibit a dysphoric, hopeless and anxious mood, impaired concentration, judgments and insight, and irrational ideations.  (AR 312). Plaintiff was diagnosed with chronic PTSD and major depressive disorder with psychotic features and prescribed Abilify and Zoloft.[4]  (AR 313, 318).  On February 26, 2014, Plaintiff's appearance and thought process were unremarkable, but her speech and behavior were slow and she demonstrated impaired insight and paranoia.  (AR 315).  On April 23, 2014, Plaintiff reported feeling

---

[3] Baclofen is a muscle relaxer used to treat muscle pain and stiffness. <www.drugs.com/baclofen.html> (last visited Dec. 5, 2017). Norco is an opioid pain medication containing a combination of acetaminophen and hydrocodone and is used to relieve moderate to severe pain. <www.drugs.com/norco.html> (last visited Dec. 5, 2017).  Tramadol is a narcotic-like pain reliever used to treat moderate to severe pain. <www.drugs.com/tramadol.html> (last visited Dec. 5, 2017).

[4] Zoloft (sertraline) is an antidepressant used to treat depression, panic disorder, anxiety disorder and PTSD. <www.drugs.com/zoloft.html> (last visited Dec. 5, 2017).

better with her medications but still suffering from auditory hallucinations. (AR 314). She was casually dressed, properly groomed, well oriented to time, place, date and purpose, and exhibiting linear thoughts. (AR 314). Tehmina Usmani, M.D., continued Abilify and increased the Zoloft dosage. (AR 314).

April 24, 2014, Khushro Unwalla, M.D., a board-certified psychiatrist, reviewed some of the medical records and examined Plaintiff on behalf of the Commissioner. (AR 321-25). Plaintiff presented in a disheveled and unkempt state, using a cane to ambulate. (AR 321). She replied "I don't know" to most questions. (AR 321). She complained of depression, auditory hallucinations, paranoia and severe memory problems. (AR 322). Plaintiff denied alcohol or drug abuse and does not use tobacco. (AR 322). She reported "adequate" self-care skills of dressing, bathing, eating, toileting and safety precautions. (AR 323). Plaintiff manages her own money but cannot do any household chores, errands, shopping or cooking without assistance. (AR 323). On examination, Plaintiff's speech was slowed and soft, her mood described as depressive, her affect flat and blunted and her thought processes slowed. (AR 323). She denied suicidal ideation but claimed that people are following her. (AR 323). Plaintiff's cognition, orientation, memory, concentration, abstract thinking, fund of knowledge, insight and judgment were all deficient. (AR 323-24). Dr. Unwalla observed psychomotor slowing and problems processing information. (AR 323). He diagnosed major depressive disorder

with psychiatric features and rule out malingering.[5] (AR 324). He opined that Plaintiff has mild difficulties in maintaining social functioning, marked difficulties focusing and maintaining attention, and marked difficulties in concentration, persistence and pace. (AR 324). Dr. Unwalla concluded that Plaintiff has severe cognitive deficits and poor insight and opined that she has moderate limitations in all areas of mental functioning. (AR 324). He opined that Plaintiff's prognosis is guarded and that she is unable to handle funds on her own behalf. (AR 325).

On May 21, 2014, David O. Hill, Ph.D., reviewed the medical file, including Dr. Unwalla's evaluation, and concluded that Plaintiff has a mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (AR 148-49). Dr. Hill found Plaintiff's allegations of depression and auditory hallucinations only partially credible because of inconsistencies in her self-reports and because medical records indicate that her symptoms improve when she is compliant with treatment. (AR 149-50). Dr. Hill opined that Plaintiff is moderately limited in the

---

[5] A "rule-out" diagnosis "means here is good evidence that the patient meets the criteria for that diagnosis, and the doctor needs more information to rule it out." Cha Yang v. Comm'r of Soc. Sec. Admin., 488 F. App'x 203, 207 (9th Cir. 2012) (Ikuta, J., dissenting); see Hansen ex rel. J.H. v. Republic R-III Sch. Dist., 632 F.3d 1024, 1028 n.3 (8th Cir. 2011) ("A 'rule-out' diagnosis . . . means the patient meets some criteria for the disorder, but the doctor needs more information to rule it out and would not be comfortable diagnosing it at that time."); Lockhart v. Colvin, No. 14 CV 0121, 2015 WL 5834284, at *4 (E.D. Cal. Oct. 1, 2015) ("A 'rule-out' notation means that the patient meets some criteria of the disorder but the doctor is unwilling to diagnose it and more information is needed.").

ability to understand, remember and carry out detailed instructions but can learn and remember basic work instructions and tasks of one or two steps. (AR 152-53). Dr. Hill further opined that because of her residual paranoia and occasion auditory hallucinations, Plaintiff's ability to deal with the public on a sustained basis is limited. (AR 153). Dr. Hill concluded that because Plaintiff's "mental limitations improve when she is compliant with treatment[,] . . . she would be able to perform simple, no-public work-like activity." (AR 150).

On July 22, 2014, Plaintiff reported fair response to her medications. (AR 342). Her depression "comes and goes" but she still hears voices on occasion and is paranoid around people that she feels will harm her. (AR 342). On examination, her appearance, behavior, thoughts, speech and mood were normal. (AR 342). On September 17, Plaintiff reported continuing paranoia but acknowledged that her depression was improving and denied auditory hallucinations. (AR 341). On examination, her appearance, behavior, thoughts, speech and mood were normal. (AR 341).

On January 14, 2015, Plaintiff reported doing "ok" with her medications. (AR 339). While paranoia is still present, her auditory hallucinations have decreased and her appetite has improved. (AR 339). On examination, her appearance, behavior, thought process, speech, affect and mood were normal. (AR 339). On February 12, Plaintiff reported that her medications were working. (AR 338). Her auditory hallucinations have decreased and her insomnia and appetite have improved but she still

experiences paranoia. (AR 338). On April 9, Plaintiff reported "doing a lot better." (AR 337). While she still feels paranoid, her depression is better and she experiences auditory hallucinations only three times a month. (AR 337). Her sleep and appetite are improved and she is able to socialize. (AR 337). On examination, Plaintiff was casually dressed and made good eye contact. (AR 337). She was oriented, calm and cooperative, with a linear thought process. (AR 337). She had a sad affect but her mood was "better" and she denied any suicidal or homicidal ideations. (AR 337).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)   Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)   Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an

affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 31). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 28, 2013, the application date. (AR 25). At step two, the ALJ found that Plaintiff's lumbar spine strain, left hip

bursitis, history of gunshot wound, obesity, depression, PTSD and anxiety are severe impairments. (AR 25). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 25-26).

The ALJ then assessed Plaintiff's RFC and concluded that she can perform medium work, as defined in 20 C.F.R. § 416.967(c),[6] except:

> [Plaintiff can] sit for two hours out of an eight hour workday; stand/walk for six hours out of an eight hour workday, with the use of a knee brace and a cane to ambulate; push/pull within the weight limitations; occasionally climb ramps and stairs; occasionally climb ladders and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. [Plaintiff] is precluded from repetitive use of her left lower extremity. Additionally, [Plaintiff] is limited to non-public, simple, routine tasks.

(AR 26-27). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 29). Based on Plaintiff's RFC, age, education, work experience and the VE's testimony, the

---

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including industrial cleaner, kitchen helper and hand packager. (AR 30-31). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act since March 28, 2013, the date the application was filed. (AR 31).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record

as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Auckland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

### DISCUSSION

Plaintiff contends that the ALJ impermissibly rejected the examining physician's opinion. (Dkt. No. 18 at 5-12).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) ("As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss, 427 F.3d at 1216; see Lester, 81 F.3d at 830-31 ("And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be

rejected for specific and legitimate reasons that are supported by substantial evidence in the record."). Further, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. Bayliss, 427 F.3d at 1216; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Dr. Unwalla, an examining physician, conducted a consultative examination on April 24, 2014. (AR 321-25). Plaintiff presented disheveled and unkempt, her speech slow and soft, with difficulty processing information. (AR 321, 323). She answered "I don't know" to most questions. (AR 321). Dr. Unwalla opined that Plaintiff has marked difficulties focusing and maintaining attention and marked difficulties in concentration, persistence and pace. (AR 324). He concluded that Plaintiff has severe cognitive deficits and poor insight and that she has moderate limitations in all areas of mental functioning. (AR 324). Dr. Unwalla opined that Plaintiff's prognosis was guarded and that she is unable to handle funds on her own behalf. (AR 325).

The ALJ gave "little weight" to Dr. Unwalla's opinion:

> I find this opinion to be unsupported by [Plaintiff's] record as a whole. In other mental status examinations, [Plaintiff's] appearance was unremarkable and she was able to recall details of her life and symptoms. At the

hearing, [Plaintiff] was able to adhere to proper decorum
        and testify on her own behalf.

(AR 29).

        Plaintiff contends that the ALJ's finding is "broad and
vague." (Dkt. No. 18 at 10). She argues that the ALJ does not
specifically reference which "other mental status examinations"
belie Dr. Unwalla's opinion. (Id.). To the contrary, the ALJ
cited four different examinations where Plaintiff's appearance,
behavior, thoughts and speech were largely unremarkable. (AR 28-
29). On February 12, 2013, while Plaintiff exhibited an anxious
mood and poor insight, her appearance, behavior, thoughts and
speech were all normal. (AR 297). On April 9, 2013, Plaintiff
acknowledged that she had improved mood and sleep. (AR 296). On
January 29, 2014, Plaintiff's appearance, motor activity, speech,
orientation, intellectual functioning, memory, fund of knowledge,
affect and thought content were all normal. (AR 312). Finally,
on April 9, 2015, Plaintiff reported "doing a lot better." (AR
337). She was casually dressed, made good eye contact, had a
linear thought process, and was oriented, calm and cooperative.
(AR 337). Further, Plaintiff does not identify any examinations
where she exhibited the disheveled and unkempt appearance and
severe cognitive deficits that Dr. Unwalla observed. Indeed, even
Dr. Unwalla suspected possible malingering. (AR 28, 324). Thus,
the ALJ properly afforded Dr. Unwalla's opinion little weight
because it was inconsistent with other evidence in the record. See
Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Plaintiff identifies multiple records indicating paranoid ideations, anxiety, auditory hallucinations, PTSD and depression. (Dkt. No. 18 at 10-11). Plaintiff appears to confuse conditions with disabilities. For example, a "person can be depressed, anxious, and obese yet still perform full-time work." Gentle v. Barnhart, 430 F.3d 865, 868 (7th Cir. 2005). As the Seventh Circuit explained: "[c]onditions must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment." Id. (citation omitted); accord Cody v. Colvin, No. 16 CV 5664, 2017 WL 218802, at *3 (W.D. Wash. Jan. 19, 2017). Further, the records cited by Plaintiff do not necessarily support Dr. Unwalla's conclusion that Plaintiff has marked difficulties focusing and maintaining attention and marked difficulties in concentration, persistence and pace.

The ALJ acknowledged that Plaintiff's depression, anxiety and PTSD were severe impairments. (AR 25). The ALJ found that Plaintiff's treatment, which was "limited to counseling and medications, . . . appeared to be effective since [Plaintiff] admitted in recent records that she was feeling better and had improved." (AR 28). The state agency consultant opined that Plaintiff has moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (AR 148). Because Plaintiff was experiencing residual paranoia and occasional auditory hallucinations despite her medications, the state agency consultant limited Plaintiff to non-public, routine tasks. (AR 27, 29, 150, 153). The ALJ properly relied on

the state agency physician's opinion in rejecting Dr. Unwalla's opinion. (AR 29); see Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (the ALJ may reject an examining physician's opinion in reliance on the report of a nonexamining advisor "when it is not contradicted by *all other evidence* in the record") (citation omitted) (emphasis in original); Social Security Ruling ("SSR") 96-6p,[7] at *2-3 (S.S.A. July 2, 1996) ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. . . . In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Finally, Plaintiff contends that the ALJ's reliance on her decorum at the hearing to reject Dr. Unwalla's opinion amounts to "quintessential prohibited 'sit-and-squirm' jurisprudence that the Ninth Circuit has condemned." (Dkt. No. 18 at 11). Indeed, the Ninth Circuit prohibits "an ALJ who is not a medical expert [from] subjectively arriv[ing] at an index of traits which he expects the claimant to manifest at the hearing." Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982); accord Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) ("The ALJ's reliance on his personal

---

[7] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." Bray, 554 F.3d at 1224. They "reflect the official interpretation of the [Agency] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Id. (citation omitted).

observations of Perminter at the hearing has been condemned as 'sit and squirm' jurisprudence.") (citing <u>Freeman</u>, 681 F.2d at 731). Here, however, the ALJ is citing Plaintiff's decorum and ability to testify on her own behalf as one more piece of evidence contradicting Dr. Unwalla's opinion. <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999) ("The inclusion of the ALJ's personal observations does not render the decision improper.") (citation omitted). Plaintiff's decorum and ability to testify on her own behalf undermine Dr. Unwalla's opinion that Plaintiff has marked difficulties focusing and maintaining attention and marked difficulties in concentration, persistence and pace.

In sum, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for giving Dr. Unwalla's opinion little weight. Accordingly, because substantial evidence supports the ALJ's assessment of Dr. Unwalla's opinion, no remand is required.

# VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  December 7, 2017

```
                              /S/
                    _____
                    SUZANNE H. SEGAL
                    UNITED STATES MAGISTRATE JUDGE
```

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**